IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES P. TEUFEL, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>THE NOTHERN TRUST COMPANY, THE NORTHERN TRUST COMPANY PENSION PLAN, THE NORTHERN TRUST COMPANY EMPLOYEE BENEFIT ADMINISTRATIVE COMMITTEE, KATIE O'NEILL, KIM SOPPI, BOB CHAPELLE, YUAN CHEN, AMYRE COLEMAN, HEATHER HESTON, DAWN ROMEI, MARK SULLIVAN, MARK WELCH, DIANE HUGHES, and CHANDRA WILENSKY,<br><br>        Defendants. | Case No. 14-cv-7214, consolidated with Case No. 15-cv-2822<br><br>Judge: John W. Darrah |

**DEFENDANTS' MOTION TO STAY PROCEEDINGS ON PLAINTIFF'S MOTIONS FOR CLASS CERTIFICATION AND TO CERTIFY COLLECTIVE ACTION**

Defendants The Northern Trust Company, The Northern Trust Company Pension Plan (the "Plan"), The Northern Trust Company Employee Benefit Administrative Committee, Kathryn O'Neill, Kimberly Soppi, Bob Chapelle, Yuan Chen, Amyre Coleman, Heather Heston, Dawn Romei, Mark Sullivan, Mark Welch, Diane Hughes, and Chandra Wilsenky (collectively, "Defendants"), move this Court to stay briefing on plaintiff James Teufel's Motions for Class and Conditional Certification ("Motions") (Dkts. 43-49).  Proceeding with the Motions would require burdensome briefing and discovery by the parties, as well as evaluation of the merits of Teufel's claims by the Court, and may require sending notice to some 3,000 individuals, all of which would be premature.  Because it is unlikely that Teufel's claims will survive past the pleading stage, the Motions are likely to be mooted.  Thus, further proceedings on them should be stayed to avoid significant waste of both the Court's and the parties' time and resources.

In support of their motion, Defendants state as follows:

1.  On March 30, 2016, Teufel filed the Consolidated Second Amended Complaint Seeking Class and Collective Action Relief (the "Complaint"). In the Complaint, Teufel alleges, on behalf of himself and certain other participants in the Northern Trust Pension Plan (the "Plan"), that Defendants violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), and the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"), through an amendment to the Plan that became effective on April 1, 2012. The deadline for Defendants to answer or otherwise respond to the Complaint is June 6, 2016.

2.  Despite being advised that Defendants intend to seek dismissal of his claims, on April 20, 2016, Teufel filed both a motion for conditional certification of an ADEA collective action pursuant to 29 U.S.C. §626(b) (which incorporates § 216(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), into the ADEA), and a motion for class certification of his ERISA claims pursuant to Federal Rule of Civil Procedure 23. Teufel seeks to simultaneously pursue both a collective action under the ADEA and a class action under ERISA based on his novel readings of those statutes. His claims, however, are highly susceptible to dismissal, because Teufel's core premise – that the ADEA and ERISA essentially prohibit any reduction in future retirement benefits short of plan termination – is completely at odds with statute, case law, and public policy.

3.  First, Teufel does not state any colorable ADEA claims, because the ADEA does not prohibit changes to pension plans like the Plan amendment he challenges. *See Slenzka v. Landstar Ranger, Inc.*, 122 F. App'x 809, 813 (6th Cir. 2004) (affirming dismissal of ADEA claim where plaintiffs alleged employer discriminated against older employees by depriving them of benefits "not even available to younger employees"); *Wu v. Special Counsel, Inc.*, 54 F.

Supp.3d 48, 53 (D.D.C. 2014) (dismissing ADEA claim where employer's treatment of the plaintiff was the same as younger applicants and thus not actionable discrimination); *see also Finnegan v. Trans World Airlines, Inc.*, 967 F.2d 1161, 1165 (7th Cir. 1992) (concluding employer did not violate ADEA even where it discontinued more favorable benefits for older employees). Indeed, Teufel's initial complaint, which alleged claims only under the ADEA, was already the subject of a motion to dismiss by the original defendants for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. His new complaint cures none of the defects identified in the original defendants' motion.

4. Second, Teufel's ERISA claims similarly fail as a matter of law. After the motion to dismiss his original complaint was filed, Teufel sought to stay all proceedings to allow him to pursue administrative remedies through a claim and appeal to the Plan's administrative committee. (Dkt. 21.) That committee then engaged in a painstaking, months-long administrative review and appeal process that, among other things, rejected the interpretations of various Plan provisions that Teufel advances in his current complaint. (*See* Dkt. 36 ¶ 9.)

5. As a matter of law, the Plan's administrative committee's interpretations of the Plan's provisions are entitled to deference. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The committee concluded that the amendment Teufel challenges did not reduce his earned and accrued benefits; rather, it capped *future* accruals calculated through salary increases beginning April 1, 2012, preserving any earned and accrued benefits through the date of the amendment. Its conclusion is consistent with the law; courts have recognized a clear distinction between accrued benefits and future benefits, explaining that "a plan may freely amend how benefits are accrued in the future (or even end their accrual)." *Cinotto v. Delta Air Lines, Inc.*, 674 F.3d 1285, 1297 (11th Cir. 2012) (affirming dismissal of anti-cutback claim); *see also*

3

*Campbell v. BankBoston*, N.A., 327 F.3d 1, 8-9 (1st Cir. 2003) (finding no violation of the ERISA anti-cutback rule where the plaintiff's claim rested on "merely the elimination of future expected accruals of benefit"). Indeed, plan sponsors may freeze plans by completely eliminating any future accruals or increases of benefits under the plan. *See Corcoran v. Bell Atlantic Corp.*, No. 97-510, 1997 WL 602859, at *5 (E.D. Pa. Sept. 23, 1997) ("[T]he reality that a 'freeze' was within defendants' lawful discretion underscores the central concern of ERISA here: the only accrued benefits which § 204(g) protects are those based on years of service already rendered at the time of the amendment."). Accordingly, although their analysis is ongoing, Defendants currently expect to respond to Teufel's Complaint by seeking judgment on all of his claims under Rules 12(b)(6), to the extent the Complaint fails to state claims on which relief can be granted, and Rule 56, to the extent that Defendants are entitled to judgment based on the administrative record from the ERISA claim and appeal process undertaken by the Plan's administrative committee.

6. In light of the case law supporting the unsustainable nature of Teufel's claims, requiring the Court and the parties to expend resources to engage on the merits of his Motions at this stage is unwarranted, particularly because the resources required would be enormous. Courts in the Northern District of Illinois have held that "it often makes sense to address a dispositive motion in advance of deciding the class certification issue because '[a] decision that the claim of the named plaintiff lacks merit ordinarily . . . disqualifies the named plaintiffs as proper class representatives.'"[1] *Griffin v. Humana Wis. Health Org. Ins. Corp.*, No. 98–C–0001, 2000 WL

---

[1] The Seventh Circuit has also recognized that class certification has the potential to place undue settlement pressure on the Defendants in an otherwise meritless case. *See Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 834 (7th Cir. 1999) ("a grant of class status can put considerable pressure on the defendant to settle, even when the plaintiff's probability of success on the merits is slight . . . class status can propel the stakes of a case into the stratosphere").

4

35572299, at *2 (E.D. Wis. June 26, 2000) (quoting *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995)); *Hakim v. Accenture U.S. Pension Plan*, 735 F. Supp. 2d 939, 956 (N.D. Ill. 2010) (striking plaintiff's motion for class certification without prejudice in favor of ruling on summary judgment), *aff'd on other grounds*, 718 F.3d 675 (7th Cir. 2013); *see also Nexstar Broad., Inc. v. Granite Broad. Corp.*, No. 1:11-CV-249, 2011 WL 4345432, at *3 (N.D. Ind. Sept. 15, 2011) (recognizing the need to limit discovery where the case is "susceptible to burdensome and costly discovery" and a motion to dismiss for failure to state a claim has been filed); *DSM Desotech Inc. v. 3D Sys. Corp.*, No. 08 CV 1531, 2008 WL 4812440, at *1-2 (N.D. Ill. Oct. 28, 2008) ("Stays are often deemed appropriate where . . . discovery may be especially burdensome and costly to the parties.").

7. Certification of collective actions and class actions requires two entirely separate processes, arising from distinct theories and applying different standards. Either one would require the parties and the Court to expend more resources at this early stage of the case than are merited by Teufel's shaky allegations, including time and money spent by both parties on substantial class and expert discovery that may ultimately prove unnecessary. To proceed with both would essentially mean the parties would conduct most of the merits discovery required for the entire case, and the Court would have to wade through the two sets of resulting analyses and arguments, before the Court has determined whether Teufel has even stated a claim.

8. Teufel's motion for certification of the collective action requires a resource-intensive discovery and notice process that is premature at this stage. Teufel seeks conditional certification of a collective action as to his ADEA claims in accordance with *Hoffmann-La Roche v. Sperling,* 493 U.S. 165, 169-70 (1989). In deciding such a motion, the Court does *not* resolve factual disputes, decide substantive issues, reach the merits, or make credibility determinations.

*Marshall v. Amsted Indus., Inc.*, No. 10-cv-0011, 2010 WL 2404340, at *5 (S.D. Ill. June 16, 2010). Rather, it decides whether there are other similarly situated employees who should receive notice of the pending action, and if so, grants conditional certification. *Sperling*, 493 U.S. at 172. If conditional certification is granted, potential collective members then must be identified, notified of the collective action and given a chance to opt-in to the action, a process guided, approved and facilitated by the Court. Thus, Teufel also asks the Court to direct defendant The Northern Trust Company "to furnish on an expedited basis data regarding members of the collective," and to "authorize the issuance of notice and the notice procedures" to the putative collective members. (Dkt.46 at 102.)

9. According to Teufel, there are more than 3,000 potential members of the collective action.[2] Dkt. #17 at 17. Identifying these possible collective members would require extensive factual and expert analysis. Because of the fact-specific determinations required for each Plan participant, collecting the information needed for an expert's analysis would be a time-consuming process in and of itself. Issuing notices to 3,000 potential members would require substantial additional time and resources.

10. Moreover, if notice is provided, and the Court subsequently dismisses Teufel's ADEA claims, it would be needlessly confusing for putative collective action members. They would receive notice of the collective action claims and opt-in procedures, only to have some or all of the claims they receive notice about dismissed.

11. Addressing the merits of Teufel's class certification motion carries with it separate, equally burdensome costs. A motion for class certification pursuant to Rule 23 of the Federal

---

[2] Defendants are uncertain of the source of Teufel's estimate of 3,000 potential collective members, and accept it only for purposes of estimating the scope of the exercise required to address Teufel's Motions on their merits.

6

Rules of Civil Procedure requires "rigorous analysis," that "[f]requently . . . will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011) (internal citations omitted). Because "Rule 23 does not set forth a mere pleading standard," its requirements must be proven by a preponderance of the evidence. *Dukes*, 131 S. Ct. at 2551.

12. As a result, briefing the merits of Teufel's motion for class certification would require the parties to engage in class and expert discovery, including depositions of the named plaintiff and both parties' experts, document production, and identification of putative class members who may be subject to individualized defenses. This work would be largely in addition to the work required for the motion for certification of the collective action. The putative class and collective are not identical groups, as demonstrated by the Complaint's differing definitions; different fact and expert analysis would be required for each. This burden in time and expense on both the parties and the Court would be wholly unnecessary if Teufel's claims are disposed of at the pleading stage.

13. Given the considerable time and expense required for the parties and the Court to wade through these complex class and conditional certification issues, judicial economy is best served by first addressing the question of which, if any, claims will survive past the pleading stage, rather than expending resources to address motions that may be moot.

14. Counsel for the parties have conferred regarding Teufel's Motions. Teufel's counsel has stated that he would not agree to wait to file his Motions until the Court had the opportunity to rule on Defendants' arguments for dismissal.

WHEREFORE, for the reasons set forth above, Defendants respectfully request that the Court grant their motion and issue an order staying further proceedings on Teufel's Motions, or

alternatively, denying Teufel's Motions with leave to re-file them in whole or in part as appropriate once this matter has progressed beyond the pleading stage.

                Respectfully Submitted,

                By: s/ Craig C. Martin
                Craig C. Martin
                Amanda S. Amert
                Shannon M. Callahan
                JENNER & BLOCK LLP
                353 N. Clark Street
                Chicago, Illinois 60654
                Phone: (312) 923-2776
                Fax: (312) 840-7776

                *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5 and Northern District of Illinois Local Rule 5.5, the undersigned, an attorney of record in this case, hereby certifies that on April 25, 2016 a true and correct copy of the **Notice of Motion** and **Defendants' Motion to Stay Proceedings on Plaintiff's Motions for Class Certification and To Certify Collective Action** was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

Dated:  April 25, 2016                                                  By: s/ Craig C. Martin
                                                                                         Craig C. Martin
                                                                                         Jenner & Block LLP
                                                                                         353 N. Clark Street
                                                                                         Chicago, Illinois 60654
                                                                                         Telephone:  (312) 923-2605

                                                                                         *Attorney for Defendants*